Jackson, J.
The principal question in this case has been already decided, viz., that Russell and the other part-owners of the ship Bristol are justly indebted to Warrall &f Williamson, for the expenses of repairing that ship in Liverpool, and cannot resist that demand on account of any supposed liability to the carpenters, and others, who made those repairs.
A question afterwards arose as to the amount for which the de fendant should be adjudged trustee, as he was origin- [ * 474 ] ally liable jointly with others, some of whom, *as it appeared by their answers, had demands to set off against what-was due from W. &f W. We have since been furnished with copies of those other answers, and also with the answers of the same trustees, in another action of P. Fish Al. against W. Sf W.
It appears that there were six part-owners of the ship Bristol, and that five only of them were summoned as trustees in the original action of Hathaway against W. &f W., and that the whole six were summoned in that of Fish Sf Al.
We do not think that the attachment in the case at bar is wholly void, in consequence of the omission of the sixth part-owner. In the case of Jewett vs. Bacon (1), it is said that the creditor, in such a case; if he would avail himself of the benefit of such a joint contract, must summon all the parties liable by law to discharge it This is correct as a general position; as the creditor may other wise lose the benefit of the attachment, in consequence of a payment afterwards made by the debtor, who is not summoned. But if an action had been brought by the person to whom they were indebted against a part of them only, the omission of the others would be matter of abatement. As each of them is liable for the whole, there would generally be no injustice nor inconvenience in allowing a recovery against one or more. If any such consequence is apprehended, they may avoid it by plea in abatement.
So, when one or more of the joint debtors are omitted in a trustee process, care must be taken that the others shall not be subjected *393 to any loss or inconvenience. But if this can be effected by allow ing those, who are summoned, the benefit of all set-offs and pay ments on the part of the others, there seems to be no reason why they should not be liable for the balance which is justly due from each and all of them.
In the case at bar, the person omitted is B. Lincoln, one of the part-owners of the Bristol; and it appears from his answer in Fish’s action, that he has certain demands * against W. [ * 47 5 ] &f W., which he claims to set off against his proportion of what is due from the owners of the ship Bristol. It is true, that we cannot judicially take notice of this fact, in this action of Hathaway. But opportunity may be given to any of the part-owners, who are summoned in this action, to add this fact to theii answers, if they wish to avail themselves of it. Lincoln, in his answer, has expressed his desire to have his demand set off in this manner.
The trustees were all defaulted in the original actions, and having refused to pay any thing upon the execution which was sued out by Hathaway, he brought writs of scire facias against the five, whom he had summoned ; suing out a several writ against each,'as is permitted by the sixth section of the statute on this subject (2). The reason of this provision of the statute undoubtedly was, that the 'rustees would frequently have no connection with each other; and che creditor might find it expedient to proceed against one, without the trouble, or the delay, that might attend a suit against another. But when the trustees, or any certain number of them, if liable at all, are liable jointly, there is an obvious convenience and propriety in joining them all in one scire facias.
As the trustees had no control over the proceedings in this particular, and it was in the option of the plaintiff to sue them either jointly or severally, it is obvious that their rights ought not to be affected by the forms of the proceedings; and if the plaintiff suffers any loss, it must’be attributed to his own act. If all the part-owners had been included in one scire facias, there would have been a joint judgment against them all, for the balance due to W. fy W. after deducting what they should be held to pay on the judgment recovered by Fish & Al., and also all set-offs which the trustees, or either of them, had against W. & W.
This right of set-off, when a part only of the debtors on the one side are creditors on the other, was formerly doubted; but is now well established in courts both of #law and [ * 476] equity (3). The right in the case at bar does not depend on any statute provisions, but arises from the nature of the suit *394 into which the trustee is thus incidentally introduced as a party. In this suit, he is called upon to answer for all the goods, effects and credits of the principal in his hands; without regard to the nature of the demands, or to the form of action in which they would be recoverable by the principal; and even if they should be of several different kinds, requiring different forms of action. On the other hand, he is to be allowed all his demands against the principal, of which he could avail himself in any form of action, or any mode of proceeding between himself and his principal; whether by way of set-off on the trial, as provided by our statutes ; or by setting off the judgments under an order of Court; or by setting off the executions in the hands of the sheriff, as is also provided by statute. If this were not so, ■ the trustee would be injured by having his claims thus drawn in, to be settled incidentally in a suit between strangers. In this adjustment of their mutual claims, we of course except, on both sides, all claims for unliquidated damages for mere torts.
In the first place, then, we are to see for what sum the six owners of the ship Bristol would have been chargeable, if they had all been included in one writ of scire facias. The balance of the account due from thorn to PF. if PF., including the charges for repairs and disbursements, was 8463 dollars, 2 cents. From this must be deducted all that was due from PF. if PF., to either of those six owners.
But here another embarrassing question arises; for the sums claimed to be set off, as due from W. if PF., were not due to any one of the trustees solely, but to some of them jointly with other persons, who are not parties to this suit. Thus G. Hoivland, one of the five who were summoned as trustees in this suit, was owner of one sixteenth part of a ship called the India; and PF. if PF. were indebted to the owners of that ship, in the sum of [ *477 ] 5332 dollars, 76 cents ; *and G. Howland, claims to set off his sixteenth part of this sum against what he owes to PF. if PF. on account of the ship Bristol. J. Howland, another of the five, was also owner of one sixteenth part of the ship India; and he claims to set off, in like manner, his sixteenth part of the said last-mentioned sum. B. Lincoln, the part-owner before named, who was not summoned by Hathaway, was owner of one eighth part of a ship called the Lydia; and PF. if PF. were indebted to the owners of this ship in the sum of 7560 dollars; and Lincoln, in his answers made in Fish’s action, claims to set off his eighth of this sum.
Now, as neither of the two Howlands, nor Lincoln, could have brought an action against PF if PF. for the proportion due to each *395 of them, as part-owners of the ships India and Lydia respectively, it seems difficult to set off that proportion against the claims of W. if W. On the other hand, it is an invariable principle, in every suit of this kind, that the trustee shall not be prejudiced by being made a party in a suit between strangers ; and it would be highly prejudicial and injurious to him, if he were compelled to pay money, as due to one of the parties in the suit, when that same party was indebted to him in another sum, which he might be unable to pay.
If all the owners of the India and of the Lydia, respectively, should bring their actions against W. if W., and the latter, at the same time, should bring their action against the owners of the Bristol, either of those parties would probably be allowed, upon the principles established in the cases before cited, to set off the demand in one action against the demand in the other. That is, if the owners of the ship Lydia, for example, should desire and assent to it, their copartner Lincoln, would probably be allowed to set off the 7560 dollars, due to him and his copartners, against the 8463 dollars, 2 cents, which Lincoln, and the other owners of the Bristol, owed to W. if W. Otherwise Lincoln might be compelled to pay the whole of the 8463 dollars, 2 cents, to W. if fV., as their execution * might be satisfied wholly out of his [ *478 ] property ; and if they were bankrupt (as it is said they are), he might receive nothing, or but a small part, of what they owed him.
The effect of such a set-off would be merely a payment by Lincoln of 7560 dollars, towards the 8463 dollars, 2 cents. As he is already liable for the whole of the latter sum, he might rightfully tender or pay any part of it; and his copartners in the ship Bristol would be accountable to him, as for so much money paid by him towards their joint debt; and as it regards his copartners in the ship Lydia, the only effect of this measure w;ould be to change their debtor. W. if W. would be discharged, and Lincoln would be accountable to them, as having received the whole of their debt due from W. if W.
It might, in some cases, be injurious to creditors, so circumstanced, to have their original debtor discharged, and a new one delegated or substituted in his place ; as the former might be solvent, and the latter unable to pay the debt. And although, in the case' of a voluntary payment, this effect could not be avoided, as one joint creditor has a right to receive the whole debt, and to give a valid discharge of it; yet when an action is pending, and application is made to the equitable jurisdiction of the Court, they would undoubt *396 edly take care so to exercise their power, as not to work injustice to any of the parties concerned.
J. M. Williams, for the plaintiff.
W. Baylies and Nye, for the defendant.
If, therefore, in the case supposed, a party situated like Lincoln, should wish to set off the whole, of the judgment, recovered by himself and his copartners, the Court would not probably do it, without the consent of the others, who were plaintiffs with him But there seems to be no objection to allowing him to set off, in such a case, the proportion due to himself out of the joint debt; which is all that he demands in this case. It would amount to nothing more, than a voluntary payment to him by W. &f W. of his eighth part of the 7560 dollars, which he had a right to [*479] receive, and for which he might lawfully give him a * discharge ; and on the other hand, a payment by him of the like sum towards the 8463 dollars, 2 cents, which he owed jointly with others; which latter payment they also had a right to receive, and for which they might give him a discharge.
Such a mode of adjusting the mutual demands would be evidently just and equitable; and if there should be any technical ob jections to adopting it, in the case of two cross-actions at the common law, those objections do not apply in a case liké the present.
In this suit, a demand is made on the trustee, without any regard to technical forms, to pay whatever effects of the principal he may have in his hands; and those effects are only what remains, after deducting all that he could retain or set off, in any lawful mode of adjustment between himself and the principal, without regard on his part to mere technical forms. It would be manifestly unjust and absurd to require Lincoln to pay, for the benefit of Hathaway, a debt due to Hathaway from W. &f W., and to leave the latter in debted to Lincoln in another sum, for which he has no security. Such a result could never have been intended by the legislature, in making the statute upon which this process is founded. They cer tainly intended that all just and reasonable allowances should be made to the trustee, to protect him from injury ; and it is our business to make the forms of proceeding yield, in every case, to the principles of law and justice; and not to leave the will of the legislature unaccomplished, from a scrupulous adherence to technical rules.
The parties will compute the amount due from each of the trustees, after allowing, according to these principles, the set-offs claimed by each ; and the judgments will be entered accordingly.

 6 Mass. Rep. 62

 Stat. 1794, c. 65.

 1 Atk. 100. —3 Ves. jun., 248. -4 D. & E. 123